**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

BRIAN BUSCHE,

            Plaintiff,           1:18-cv-10322-NLH-AMD

   v.

                              **OPINION**

NATIONAL RAILROAD PASSENGER CORP.,
doing business as AMTRAK,

            Defendant.

_____

**APPEARANCES:**

DAVID T. SIROTKIN
MORELLI LAW FIRM, PLLC
777 THIRD AVENUE
31ST FLOOR
NEW YORK, NY 10017

     _On behalf of Plaintiff Brian Busche_

DANIEL JOSEPH GILLIN
DANIEL EDWARD MULLIGAN
LANDMAN CORSI BALLAINE & FORD
ONE PENN CENTER
1617 JFK BOULEVARD
SUITE 955
PHILADELPHIA, PA 19103

     _On behalf of Defendant National Railroad Passenger Corp._
     _d/b/a AMTRAK_

**<u>HILLMAN</u>, District Judge**

    This matter is before the Court on Plaintiff's counsel's motion for attorney's fees.  There is no opposition to the motion.  For the reasons to be discussed below, counsel's motion will be granted in part and denied in part.

## BACKGROUND

This case arises from an accident that left Plaintiff Brian Busche severely injured while working.  On January 25, 2018, Plaintiff, an employee of Defendant Amtrak, was repairing a mechanical crane on an Amtrak Mobile Maintenance Unit.  Although the crane was supposed to be deactivated during the repairs, it suddenly became energized and struck Plaintiff, causing him to fall from his ladder.  As a result, Plaintiff suffered a traumatic brain injury, as well as fractures to the hyoid bone in his neck, thyroid cartilage,[1] and injuries to his back and shoulders.

In April 2018,[2] roughly three months after the accident, Plaintiff retained the Morelli Law Firm, PLLC ("MLF").  In retaining the firm, Plaintiff entered into a contingency fee agreement at MLF's New York City office.  [Doc. No. 23.]

On June 8, 2018, Plaintiff filed a complaint in this Court against Defendant under the Federal Employers' Liability Act

---

[1] This injury required surgery.

[2] Counsel's affidavit states that his firm was retained by Plaintiff in April 2017, "approximately three months after the accident."  [Doc. No. 21.]  Because the accident occurred on January 25, 2018, the April 2017 date, rather than April 2018, would appear to be a typographical error.  The Court notes that the Agreement, which was provided by counsel pursuant to this Court's Order [Doc. No. 23] because it was not attached to counsel's motion, is undated.

(F.E.L.A.), 45 U.S.C. §§ 22-34; the Federal Safety Appliance Acts, 56 U.S.C. §§ 1-16; and the Boiler Inspection Acts, 45 U.S.C. §§ 22-34.[3]

On August 29, 2019, the parties mediated at National Arbitration and Mediation in New York. At the mediation, Defendant made a "final" settlement offer for $1 million. It appears that counsel rejected Defendant's "final" settlement offer. After two months of additional negotiations, the parties eventually settled for $3.75 million.

Pursuant to a New Jersey state court rule, N.J. Ct. R. 1:21-7(c), counsel seeks approval of a 27% contingency fee of the settlement amount beyond $3 million - *i.e.*, 27% of $750,000. This rule sets the percentage of allowable contingency fees in tort cases in the New Jersey state court.[4] Where the settlement

---

[3] This Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. None of the federal statutes upon which Plaintiff bases his claims provide for attorney's fees.

[4] N.J. Ct. R. 1:21-7(c) provides:

> In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, . . . an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
>
> (1)  33 1/3% on the first $750,000 recovered;
>
> (2)  30% on the next $750,000 recovered;
>
> (3)  25% on the next $750,000 recovered;

exceeds $3 million, counsel, with written notice to his client, must apply to the court for a "reasonable fee" on the excess settlement funds.[5]   N.J. Ct. R. 1:21-7(c).

The retainer agreement between counsel and Plaintiff contains language identical to N.J. Ct. R. 1:21-7(c).   The agreement between the parties provides:

> **Fees.** If the law firm recovers money for the client which is greater than the disbursements in the case (see below) the client will pay the law firm a legal fee.  The fee will be based on a percentage of the net recovery.  Net recovery is the total recovered on the client's behalf, minus the unaffiliated third party out of pocket costs and expenses of the litigation, and minus any interest included in a judgment pursuant to R.4:42-11(b).  The fee will be as follows:
>
> > (1)  33 1/3% on the first $750,000 recovered;
> >
> > (2)  30% on the next $750,000 recovered;
> >
> > (3)  25% on the next $750,000 recovered;
> >
> > (4)  20% on the next $750,000; and
> >
> > (5)  on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and

---

(4)  20% on the next $750,000 recovered; and

(5)  on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof . . . .

[5]  As noted in counsel's brief, in September 2014, New Jersey Court Rule 1:21-7(c) was amended to change the fee schedule from $2 million to $3 million as to the amount over which court approval is required.  [Docket No. 21-1 at 4 n.1.]

> (6) where the amount recovered is for the benefit of
> a client who was a minor or mentally incapacitated
> when the contingent fee arrangement was made, the
> foregoing limits shall apply, except that the fee on
> any amount recovered by settlement before empaneling
> of the jury or, in a bench trial, the earlier to
> occur of Plaintiff's opening statement or the
> commencement of testimony of the first witness,
> shall not exceed 25%. However the law firm agrees
> that it will not seek a fee in excess of 25% of the
> net recovery over $2,000,000.00.

[Doc. No. 23 at 1.]

Based on the parties' agreement, counsel's fees on the first $3 million of the $3.75 million settlement totals $812,500. Counsel now seeks approval for fees on the remaining $750,000 in excess of $3 million – which request totals an additional $202,500 in attorney's fees. No party has filed a response to counsel's motion.

## DISCUSSION

In deciding whether to approve counsel's application for its excess contingency fee, this Court must resolve two issues. As a preliminary matter, the Court must determine what law should be applied to counsel's application. Then, the Court must apply that law to determine whether the excess fee requested is appropriate.

### 1. Law applicable to counsel's fee application

In seeking approval of their fee, counsel asks this Court to apply a New Jersey state court rule. Counsel fails, however,

to provide any support for why this Court should apply a state court rule of procedure in this federal action.

The Court's independent research reveals that N.J. Ct. R. 1:21-7 has been applied in this District in four different scenarios: (1) where counsel is admitted to appear before this Court *pro hac vice*;[6] (2) where the fee agreement contains a choice of law provision;[7] (3) where there is a fee dispute

---

[6] L. Civ. R. 101.1(c)(4) states: "A lawyer admitted *pro hac vice* is deemed to have agreed to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees." See generally Elder v. Metro Freight Carriers, Inc., 543 F.2d 513, 518 (3d Cir. 1976) ("[P]laintiff's counsel had been admitted *pro hac vice* and, accordingly, was subject to the local rules during the course of his practice before the district court.").

[7] See Newcomb v. Daniels, Saltz, Mongeluzzi & Barret, Ltd., 847 F. Supp. 1244, 1248 (D.N.J. 1994) (citing Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971)).  It should be noted that in Newcomb no express choice of law provision was present in the fee agreement.  See id. at 1248.  Rather, counsel argued that because the parties explicitly agreed to a 40% excess contingency fee in the fee agreement, it contained a choice of law provision.  See id. at 1248.  According to counsel, because Pennsylvania law would permit a 40% excess fee and New Jersey would not, the parties intended for the former state's law to govern the fee agreement.  See id.  Additionally counsel argued that "there need not be an explicit designation of a particular state in a contract for a court to conclude that an effective choice of law was made . . . ."  See id. at 1248 n.2.  In doing so, counsel cited to Comment (a) to § 187 of the Second Restatement.  See id.  That comment states:

> [E]ven when the contract does not refer to any state, the forum may nevertheless be able to conclude from its provisions that the parties did wish to have the law of a particular state applied.  So the fact that the contract contains legal expressions, or makes reference to legal doctrines, that are peculiar to the local law of a

between client and counsel;[8] and (4) where the case involves the interests of minors.[9]

This case does not fall into any of those categories. The instant motion by Plaintiff's counsel for the unopposed approval of attorney's fees arises in a case based solely on federal law and not involving a minor, originally filed in this Court, by counsel admitted to practice in this District. Moreover, although the retainer agreement contains language that mirrors the New Jersey state court rule, it does not cite that rule, and the agreement does not contain any specific choice-of-law provision.

Thus, the Court finds that this case presents a fifth category – a fee application by admitted counsel in a federal statutory tort case - not expressly addressed in the Court's

---

particular state may provide persuasive evidence that the parties wished to have this law applied.

Restatement (Second) of Conflict of Laws § 187 cmt. a. Although the Court ultimately invalidated counsel's alleged choice of law provision, it did so on public policy grounds. See id. at 1249-50 n.3. Moreover, rejecting the provision under New Jersey choice of law rules, the Court necessarily assumed its validity.

[8] See Newcomb, 847 F. Supp. at 1246, 1248-49. In Newcomb, the Court, in applying New Jersey law to the fee agreement, likely did so because this dispute was contractual in nature.

[9] See Norman v. Haddon Twp., No. 1:14-cv-06034, 2018 WL 3536752, at *2 (D.N.J. July 23, 2018) (application of New Jersey state law to contingency fee where case involved minor); Estate of McMahon v. Turner Corp., No. 1:05-cv-04389, 2007 WL 2688557, at *2-4 (D.N.J. Sept. 7, 2007) (same).

local rules or governing case law.  As set forth more fully below, this Court now holds, although the route is admittedly circuitous, that N.J. Ct. R. 1:21-7 governs this fifth category, thus aligning this Court's local rule governing *pro hac vice* counsel with the obligations of counsel admitted to appear before this Court.

As noted above, *supra* note 6, Local Civil Rule 101.1(c)(4) provides that a "lawyer admitted *pro hac vice* is deemed to have agreed to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees."  The Court's Local Rules do not contain an express provision that lawyers who are admitted to practice in this District are also constrained by N.J. Ct. R. 1:21-7.  Although some courts have seemed to presume no gap exists,[10] this Court endeavors here to fill an apparent gap in our local rules.

---

[10] In Halley v. Honeywell International, Inc., 861 F.3d 481, 499 (3d Cir. 2017), the Third Circuit noted, "Lawyers practicing before the District Court are well aware contingent fee agreements will be subject to the limitations of Rule 1:21-7 as incorporated in the Local Rules.  Accordingly, New Jersey Court Rule 1:21-7, incorporated in Civil Local Rule 101.1, acts as a federal procedural rule limiting contingent fee agreements in class actions certified under Federal Rule of Civil Procedure 23 in the District of New Jersey."  The Local Rule referenced by the Third Circuit, however, was L. Civ. R. 101.1(c)(4) concerning lawyers admitted *pro hac vice*, and not any other provision in L. Civ. R. 101.1.  Halley, 861 F.3d at 499.  To support its conclusion that N.J. Ct. R. 1:21-7 applied to "[l]awyers practicing before the District Court," the Halley court cited to Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 417 (3d Cir. 1995).  The Mitzel decision held that the New

Under Local Civil Rule 101.1(b), "Any attorney licensed to practice by the Supreme Court of New Jersey may be admitted as an attorney at law upon completion of a sworn application submitted to the Court."  Under Local Civil Rule 103.1(1), the "Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this

---

Jersey contingency fee limits incorporated in the Local Rules applied as a matter of federal procedural law.  _Mitzel_, 72 F.3d at 415.  That decision was based on then-Local Rule 4(c), which only expressly applied to lawyers admitted _pro hac vice_.  _Id._ at 416.  Indeed, two of the lawyers in _Mitzel_ were admitted _pro hac vice_.  _Id._ at 415.  The holding in _Mitzel_ was also based in part on the reasoning in _Elder_, 543 F.2d at 518.  In _Elder_, the Third Circuit upheld the district court's application of N.J. Ct. R. 1:21-7, finding that a "court has authority to issue appropriate orders to members of its bar in enforcement of its rules. . . . [W]here the court had been asked for an order of distribution, it had the power to direct that the defense lawyers distribute to plaintiff's counsel only the fee permitted by the local rule."  _Elder_, 543 F.2d at 518.  The decision in _Elder_, however, was silent as to which local rule the district court applied, but it appears that it was based on the general authority of the court to govern members of its bar, and in reference to the local rule governing _pro hac vice_ attorneys.  _Id._ ("Defense counsel was a practicing member of the district court's bar, as was Mr. McKeever, one of plaintiff's counsel.  Mr. Minion had been admitted _pro hac vice_ and, accordingly, was subject to the local rules during the course of his practice before the district court.").  Thus, it appears to this Court that the applicability of N.J. Ct. R. 1:21-7 in tort cases in this District has arisen from the Local Rule governing lawyers admitted _pro hac vice_, but in that application, the decisions have also recognized a court's authority to govern the conduct of all lawyers who appear before it, which includes a uniform application of N.J. Ct. R. 1:21-7.  However, the Local Rules themselves are devoid of any express declaration of the governing rule.

Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law."

Correspondingly, in determining a fee request under N.J. Ct. R. 1:21-7, state courts are guided by the factors listed under Rule 1.5(a) of the New Jersey Rules of Professional Conduct.[11]   See N.J. Ct. R. 1:21-7(e) ("In all cases contingent

---

[11] RPC 1.5 provides in relevant part:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
>> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>>
>> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>>
>> (3) the fee customarily charged in the locality for similar legal services;
>>
>> (4) the amount involved and the results obtained;
>>
>> (5) the time limitations imposed by the client or by the circumstances;
>>
>> (6) the nature and length of the professional relationship with the client;
>>
>> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>>
>> (8) whether the fee is fixed or contingent.

fees charged or collected must conform to RPC 1.5(a)."). Relevant here, RPC 1.5(c) provides, "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules."

Thus, under the Rules of Professional Conduct as adopted in New Jersey, which are applicable to attorneys admitted to practice in this District by virtue of being admitted to practice in New Jersey state court, a lawyer is precluded from entering into a contingency fee agreement that is prohibited by

---

(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated in writing to the client before or within a reasonable time after commencing the representation.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

The Court finds that counsel's contingency fee agreement with Plaintiff is in compliance with RPC 1.5(c). The agreement (1) was made in writing, (2) states the method by which the fee is to be determined, and (3) states whether expenses are to be deducted before or after the fee is calculated.

law or violates the RPCs or court rules.  Proper contingency fee

agreements must comply with RPC 1.5, the factors of which rule

are incorporated into N.J. Ct. R. 1:21-7.

However, while N.J. Ct. R. 1:21-7 expressly incorporates

RPC 1.5 the opposite is not true.  RPC 1.5 does not expressly

incorporate N.J. Ct. R. 1:21-7, nor do the local rules of this

Court except for *pro hac vice* attorneys.  And adopting N.J. Ct.

R. 1:21-7, a state procedural rule to assess a fee request in a

case involving a federal statutory tort would appear to violate

the general rule that federal courts apply federal procedure and

not state procedure.  See, e.g., Leonardis v. Burns Intern. Sec.

Services, Inc., 808 F. Supp. 1165, 1186, 1186 n.28 (D.N.J. 1992)

(explaining that "it is an error of law to apply N.J. Rule 4:42-

9(a)(6) - a New Jersey state procedural rule [regarding in which

actions attorney's fees are permitted] - to a non-New Jersey

cause of action," explaining that to do so would "violate the

constitutional rule that in federal court actions with federal

question jurisdiction, federal rules of procedure are followed")

(citing First State Underwriters Agency of New England

Reinsurance Corp. v. Travelers Ins. Co., 803 F.2d 1308, 1316 (3d

Cir. 1986); New Jersey v. Kinder, 701 F. Supp. 486, 488 (D.N.J.

1988); Watson v. Manhattan & Bronx Surface Trans. Operating

Auth., 487 F. Supp. 1273, 1276 (D.N.J. 1980));  Shady Grove

Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393,

406-07 (2010) ("Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters rationally capable of classification as procedure.  In the Rules Enabling Act, Congress authorized this Court to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules 'shall not abridge, enlarge or modify any substantive right,' § 2072(b)."); cf. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

The Court concludes, nonetheless, that it will apply N.J. Ct. R. 1:21-7 in assessing counsel's request.  First, although the fee agreement does not expressly refer to the state rule, the express terms of the agreement are consistent with it. Second, the statutes that form the basis for Plaintiff's claims have no fee-shifting provisions which could provide a federal substantive rule for application requiring this Court to engage in gap-filling.  Relatedly, and as separate grounds, while RPC 1.5 does not refer to N.J. Ct. R. 1:21-7, courts have used the state court rule in interpreting RPC 1.5 rendering it at least persuasive authority and a source of law to fill the gap. Lastly, this Court is unable to discern any meaningful reason why lawyers admitted *pro hac vice* who are expressly governed by

N.J. Ct. R. 1:21-7 in "tort cases" by our local rules should be any worse or better off than lawyers admitted to practice in our District unless bound by some other agreement or application of law.  Accordingly, under the unique circumstances of this case and in furtherance of the Court's general power to regulate the conduct of attorney's appearing before it,[12] the Court will consider counsel's fee application under N.J. Ct. R. 1:21-7 in this federal statutory tort case in order to apply a uniform standard in the absence of a compelling reason to do otherwise.

### 2.  Reasonableness of excess contingency fee requested

Counsel seeks the approval of a 27% fee of the $750,000 excess over $3 million of the $3.75 million settlement.  In

---

[12] The Third Circuit has explained, "Rules regulating contingent fees pertain to conduct of members of the bar, not to substantive law which determines the existence or parameters of a cause of action.  Such rules are designed to promote the efficient disposition of litigation and enhance the public's confidence in the bar.  We have reaffirmed the 'unquestioned principle' that all federal courts have 'the power both to prescribe requirements for admission to practice before (them) and to discipline attorneys who have been admitted to practice before (them).'" Elder, 543 F.2d at 519 (citation omitted).  The Third Circuit has further explained, "Contingency fee agreements apportion resources between plaintiffs and their counsel rather than plaintiffs and defendants, and therefore are collateral to the substantive merits of lawsuits in a way that awards of attorney's fees between parties are not.  Furthermore, because of the imbalance of power that may exist between client and attorney, contingency fee agreements are of special concern to the courts, and fall within a court's supervisory power over the members of its bar." Mitzel, 72 F.3d at 417 (citations omitted).

applying N.J. Ct. R. 1:21-7, the Court must decide whether counsel's proposed 27% contingency fee - an additional $202,500 - for amounts recovered in excess of $3 million is reasonable.

As set forth above, where an attorney seeks fees on the portion of a settlement that exceeds $3 million, the attorney, on written notice to his client,[13] may apply to the Court for approval of the excess fee.  See N.J. Ct. R. 1:21-7(c)(5),(f).[14] Further discussed above, in determining a fee request under N.J. Ct. R. 1:21-7(f), courts are guided by the factors listed under Rule 1.5(a) of the N.J. Rules of Professional Conduct.  See N.J. Ct. R. 1:21-7(e) ("In all cases contingent fees charged or collected must conform to RPC 1.5(a)."); King v. County of Gloucester, 483 F. Supp. 2d 396, 399 (D.N.J. 2007) (applying RPC 1.5(a) to determine a fair fee").  In applying RPC 1.5(a), courts focus on "whether 'the case presented problems which

---

[13] Counsel's certification states that Plaintiff is aware of counsel's request for fees on the excess $750,000.  [Doc. No. 21-2 at 5.]

[14] N.J. Ct. R. 1:21-7(f) provides:

> If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge or the designee of the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances.  This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.

required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.'"  See King, 483 F. Supp. 2d at 399 (citing Mitzel, 72 F.3d at 418; Wurtzel v. Werres, 201 N.J. Super 544, 549 (App. Div. 1985)). Courts generally find exceptional lawyering in cases that have established new law, see Buckelew v. Grossbard, 189 N.J. Super. 584 (Law Div. 1983), aff'd, 192 N.J. Super. 188 (App. Div. 1983), or "where trial, appeal, and retrial are required," see Anderson v. Conley, 206 N.J. Super. 132, 135, 147-48 (App. Div. 1985) (citations omitted) (quoting Delle Fave v. Sanit. Equip. Corp., 197 N.J. Super. 555, 563 (Law Div. 1984)).

Even in the absence of novel law and appellate litigation, courts find exceptional lawyering where the case presented significant obstacles to counsel and success appeared unlikely. See Estate of McMahon, 2007 WL 2688557, at *3 (quoting Matter of Reisdorf, 80 N.J. 319, 329 (1979)) ("The New Jersey Supreme Court has also stated that '[i]t is instructive to point out that the element of uncertainty of recovery is often important in determining whether a contingent fee as ultimately charged is reasonable or excessive.'"); id. (unfavorable OSHA report and autopsy);[15] King, 483 F. Supp. 2d at 399 (no grand jury

---

[15] In Estate of McMahon, counsel faced an unfavorable OSHA report, which placed all culpability on plaintiff's employer, exculpating the other defendants, with the likely consequence that plaintiff would have only recovered worker's compensation

indictment of defendants and plaintiff "assailed" by the press);[16] Norman, 2018 WL 3536752, at *1 (plaintiff was in an alleged "combative" and "zombie like" state before dying).[17]  In each of these cases, the element of uncertainty was present, requiring exceptional skills to induce an otherwise unlikely settlement.  See Estate of McMahon, 2007 WL 2688557, at *3; King, 483 F. Supp. 2d at 399-400 (same); Norman, 2018 WL 3536752, at *3 (same).  Conversely, in Anderson, a New Jersey appellate court did not find exceptional lawyering where an 18-year-old plaintiff was left quadriplegic by a car accident caused by an intoxicated driver.  See 206 N.J. Super. at 134, 148.  In light of the facts, the court noted that it was "the

---

benefits.  See 2007 WL 2688557, at *3.  Furthermore, an autopsy of the decedent revealed that he had marijuana in his system at the time of the accident and death.  Id.  Despite these obstacles, counsel's hard work ultimately convinced the defendants to settle, rather than risk going to trial.  See id.

[16] In King, the "grand jury did not indict any of the defendants" and "[Plaintiff] was assailed in the press as an out-of-control 300 pound, mentally ill inmate."  483 F. Supp. 2d at 399.

[17] In Norman, the plaintiff was "a drug addict [for] most of his adult life," and who, prior to his death, was in an allegedly violent and "zombie-like" state.  2018 WL 3536752, at *1.  Furthermore, defendants retained "formidable experts who opined that defendants were not to blame for [plaintiff's] death."  Id. at *2.  The Court stated: "Given the circumstances surrounding [plaintiff's] death and the unsympathetic situation he presented, it is likely not many attorneys would have represented [him]."  Id. at *3.

type [of case] which is ripe for settlement."  See id. at 147-48.

Moreover, where a case is not unusually time consuming, the case is not considered to be exceptional.  See Mitzel, 72 F.3d at 416, 418-19 (finding two-and-a-half years of litigation and 5100 attorney hours of discovery as not unusually time consuming where case did not present problems requiring exceptional skills); Mechin v. Carquest Corp., No. 2:07-cv-05824, 2011 WL 13141661, at *1 (D.N.J. June 14, 2011) (finding litigation lasting for approximately four years as not time consuming where case was not sufficiently exceptional); cf. King, 483 F. Supp. 2d at 399 (finding three "plus" years of litigation and 4290 hours as time consuming where wrongful death was "far from the 'run of the mill' case" and "hard-fought").

Where the Court finds exceptional lawyering, it will generally award a fee approximately at or above 1/3 of the excess amounts recovered.  See Estate of McMahon, 2007 WL 2688557, at *3 (approving net recovery of 31.3% of settlement); King, 483 F. Supp. 2d. at 399 (approving a 33.33% fee on excess amounts above $2 million, based on the prior version of N.J. Ct. R. 1:21-7(c)).  Where, however, courts have not found the above-described factors rendering a case as exceptional, the excess fee will range from 20% to 25% of the excess amounts recovered. See Mitzel, 72 F.3d at 416-20 (affirming magistrate judge's

decision to deny net recovery of 33.33% of settlement and fix fee at 20% in excess recovery).

Here, counsel has not affirmatively contended that this case is "exceptional."  Even if they had, this contention is readily dismissed.  Although two months of negotiations after a "final" settlement offer for $1 million at the conclusion of mediation ultimately resulted in a $3.75 million settlement, and the Court has no reason to question counsel's work, which appears to be diligent, competent, and delivered an excellent result for Plaintiff, this is not an exceptional case.  First, counsel's work did not establish new law or necessitate an appeal.  Second, counsel does not contend that the matter was unusually time consuming, that significant obstacles existed, or that success was unlikely.[18]  The suit was filed in June 2018 and the matter settled by November 2019.  None of the factors that were present in the exceptional cases discussed above are present here.

_____

[18] According to counsel, he "engaged in detailed discovery with Defendant" and "traveled to Philadelphia on at least five occasions to take or defend depositions."  [Doc. No. 21.]  In preparing for the deposition of Defendant's employees, counsel states that he "spent significant time" reviewing Defendant's discovery responses as well as literature on the MMU to understand "the complex mechanical workings of the unit in order to effectively depose Amtrak's employees."  Moreover, counsel retained four medical experts and an engineering expert. [Doc. No. 21.]  These are all normal litigation activities in a tort action where a plaintiff has suffered significant injuries.

In light of the ordinary nature of this case, the Court must determine whether 27% on the excess settlement above $3 million is nevertheless a reasonable fee.  Where courts do not find exceptional lawyering, the awarded fees generally range from 20% to 25% in excess of the amounts recovered under N.J. Ct. R. 1:21-7(c).  See Mitzel, 72 F.3d at 418-20 (20%); Mechin, 2011 WL 13141661, at *1 (25%).[19]

Here, counsel maintains that 27% is a reasonable amount because courts have granted requests for contingency fees on excess amounts higher than 27%, and that this figure is an average of N.J. Ct. R. 1:21-7(c)'s fee schedule.  The Court is not persuaded by these arguments.  As discussed in detail, those cases nearing the 27% mark in fee awards on excess amounts were exceptional cases, and based on more factors than an average of percentages.  Because this case is run-of-the-mill, the cases that were not found to be exceptional are a more fitting guidepost for what fee counsel is entitled to here.  Because the facts of this case more closely resemble Mitzel, and a similar amount of time was spent on the case, the Court finds it

---

[19] In Mechin, the court granted a 25% contingency fee in excess amounts recovered, where the attorney had made a "significant time commitment" of approximately four years.  See Mechin, 2011 WL 13141661, at *1.  However, in Mitzel, where the Third Circuit affirmed the magistrate judge's decision to fix the contingency fee in excess amounts at 20%, counsel had only spent two-and-a-half years in litigating the case.  See Mitzel, 72 F.3d at 416, 418, 420.

appropriate to award counsel 20% of amounts recovered in excess of $3 million.  The Court also notes that N.J. Ct. R. 1:21-7(c)'s applies a sliding downward scale as the amount of recovery goes up.  This is because as the amount of the overall recovery goes up the risk increases that attorney's fees will represent a windfall to counsel far beyond the work actually done in the case.  It is somewhat perverse that the rule would be drafted to apply lower percentages on amounts between $2.25 million and $3 million (20%) than that applied to amounts between $1.5 million and $2.25 million, just to apply a 27% rate on amounts over $3 million in a mine-run case.  The rule clearly contemplates that the fee percentage goes down as the recovery increases not the other way around.  The fee percentage awarded here on the amount larger than $3 million is at least no larger than the amount awarded on the recovery in the tier below ($2.25 million to $3 million), a result consistent with a meaningful recovery in an otherwise unexceptional case.

## CONCLUSION

Counsel's motion presents a one-sided view of their entitlement to fees, with no opposing party, and a Defendant unconcerned how the settlement is ultimately distributed between Plaintiff and his lawyer.  The Court must scrutinize counsel's application because Plaintiff is the one who will lose if counsel receives the 27% excess contingency fee they seek.

The difference between counsel's requested 27% ($202,500)
and the Court's determination that 20% on the excess is
appropriate ($150,000) represents $52,500 to Plaintiff, which
although not as large as that in Mitzel, is still "a
considerable sum in any financial circumstances."  See Mitzel,
72 F.3d at 420 (determining a $213,221.81 difference between fee
requested and fee granted).  Of course, the $150,000 in fees on
the settlement in excess of $3 million is in addition to the
$812,500 in fees on the $3 million pursuant to the parties'
contingency fee agreement.  This totals $962,500 in attorney's
fees.  As the Third Circuit noted in Mitzel: "Any time the
attorney's fee and the client's recovery come from a fixed fund
of money, a 'significant conflict of interest' arises between
attorney and client.'"  See id. (quoting Report of Third Circuit
Task Force, Court Awarded Attorney's Fees at 36 (Oct. 8, 1985),
reprinted in 108 F.R.D. 237 (1985)).  Moreover, the Mitzel Court
noted that "[t]he premise behind Rule 1:21-7 is that attorneys
and their clients do not have equal bargaining power, and that
clients consequently need protection from the courts with
respect to contingent fee agreements."  Mitzel, 72 F.3d at 420
(citing Kingman v. Finnerty, 198 N.J. Super. 14 (App. Div.
1985)); see also id. at 419 (finding that "in the absence of
other factors indicating that an increased fee is warranted, we

cannot hold that the district court exceeded the considerable bounds of its discretion").

In making this determination, the Court does not suggest that there was any impropriety on the part of Plaintiff's counsel.  Nor does this Court raise doubts about the diligence and competence of counsel.  Because of counsel's hard work and dedication, Plaintiff obtained an excellent result.  Contingency fees are undoubtedly an important tool to provide all persons, no matter their station, access to effective representation and a just result.  As the court stated in Norman:

> All citizens deserve to be represented by competent counsel when a potential injustice occurs.  Like it or not, unless the prospect of an enhanced fee is possible the meek and downtrodden may not be able to attract competent counsel to handle unpopular or unduly difficult cases.  Lawyers should be incentivized to represent all persons, not just those with largesse.

Norman, 2018 WL 3536752, at *4.  Contingency fee agreements make it possible for lawyers to serve an important role. Equally important, the Court must serve its own function by protecting the interest of plaintiffs.

Therefore, the Court will grant counsel's application for fees on the $750,000 settlement in excess of $3 million, but finds that counsel is entitled to 20% rather than their requested 27%.  An appropriate Order will be entered.

Date:  October 9, 2020                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.